UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| REBECCA H. YANCEY, | } |
| Plaintiff, | } |
| v. | } CV 00-AR-2036-S |
| HOME DEPOT U.S.A., INC., et al., | } |
| Defendants. | } |

**ENTERED**

**MAY - 6 2002**

**MEMORANDUM OPINION**

Before the court are two motions for summary judgment filed by defendants, Home Depot U.S.A., Inc. ("Home Depot") and Tom Burns ("Burns").

Plaintiff, Rebecca H. Yancey ("Yancey"), instituted this action against defendants on July 21, 2000. She asserts claims of religious discrimination, gender discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*. Additionally, Yancey asserts a claim under the Equal Pay Act of the Fair Labor Standards Act ("EPA"), 29 U.S.C. § 206(d), *et seq*. She appends state law claims for breach of contract and fraud.

I. STATEMENT OF FACTS

Yancey, a female, began her employment at Home Depot in March 25, 1996, as a full-time department salesperson in the flooring department. She was employed at the Eastwood store, where the store manager was Burns, and her department supervisor was Carlos Harper ("Harper"). Yancey claims that she was constructively discharged on July 9, 1999.[1]

---

[1] Yancey alleges that "[o]n or about July 9, 1999, [Yancey] had just about as much religious harassment and mistreatment as she could stand and was constructively discharged from her job." (Compl. ¶ 17.)

Defendants claim, however, that Yancey voluntarily resigned in July 1999.

Prior to being hired, Yancey was interviewed by Van Rushton ("Rushton"). During this interview, she expressed a desire to be scheduled off on Sundays because she wanted to attend church. Rushton told her that employees rotated working on Sundays and that employees generally were off on every other Sunday or every third Sunday.[2] Though Yancey orally expressed her desire to be off on Sundays, she indicated on her application for employment that she was willing to work weekends and evenings. When she began her employment, Yancey signed a Home Depot Job Profile for her position, and it provided that "[a] Salesperson is expected to be available for work any day of the week." (Yancey Dep. Ex. 5.)

In support of her claim of disparate treatment, Yancey asserts that, contrary to Rushton's representations during her interview, she was rarely able to attend church while she was employed at Home Depot because of her work schedule. She further alleges that the schedules of male employees were accommodated so that the male employees could attend church. Specifically, she names the following males as alleged comparators: Harper, A.C. Drummer ("Drummer"), Larry Pruitt ("Pruitt"), and Erroll Files ("Files"). Harper, Yancey's supervisor, was responsible for making the department's weekly schedules; his suggested schedule was subject to review, approval, or modification by an assistant store manger. Yancey contends that, before Harper was promoted to supervisor, he was scheduled to work on Sundays but that he arrived to work late on those days because he attended church services. Yancey further alleges that Harper was never disciplined or written up, and that he was promoted over Yancey to the supervisor position. Defendants deny Yancey's allegations regarding Harper, but they

---

[2] Defendants assert that "Home Depot's most profitable day of the week on a per-hour basis is Sunday." (Defs.' Statement of Material Facts at 3.)

state that "Harper rarely scheduled himself to work on Sundays. The store manager had asked the department supervisors not to schedule themselves to work Sunday[s] because department supervisors order a lot of merchandise, and the vendors who provide the merchandise are closed on Sunday[s]." (Defs.' Statement of Material Facts at 3 (internal citations omitted).)

Drummer, another alleged comparator, plays a guitar at his church for extra income. Yancey contends that defendants have accommodated him by allowing him to have Sundays off. Yancey purportedly asked Harper why Drummer was accommodated, while she had not been. According to Yancey, Harper told her that, because Drummer only worked part-time, nothing could be done. Yancey contends that her department manager, Stephen Smith ("Smith") told her the same thing. Yancey also alleges that Files had been scheduled to work Sundays on several occasions, but that he arrived to work several hours late, and that, at least once, he did not show up for work and he did not call. Yancey further asserts that Files was not reprimanded. Home Depot responds to Yancey's allegations that Drummer and Files are similarly situated employees by averring that Drummond and Files are part-time employees. Drummer was both a part-time and a full-time employee at various stages in his tenure at Home Depot. Drummer switched to part-time employment on November 9, 1998, and he returned to full-time employment on March 22, 1999. Files became a part-time sales associate in 1996, and in June 1998, he obtained a position as cashier and transferred out of the flooring department. Home Depot asserts that it treats "part-time associates differently in terms of scheduling. Home Depot does not require part-time associates, unlike full-time associates, to be available seven days a week, including days and evenings." (Defs.' Statement of Material Facts at 4 (internal citations omitted).) Home Depot contends that "[u]nlike full-time associates, part-time

3

associates may have set work schedules." (Id. at 5). Burns and the Human Resources Manager both testified that "Home Depot's practice is to accommodate the schedules of part-time associates due to the very fact that they are part-time." (Defs.' Statement of Material Facts at 15-16.) Home Depot further argues that "associates who ask to be part-time do so because being part-time is the way to get a schedule tailored to their own needs." (Id. at 16.)

In addition to offering Harper, Drummer, and Files as male employees whose schedules were accommodated, Yancey alleges that Pruitt, a measurer in the carpet department, was accommodated regarding his desire to not work on Sundays. According to Yancey, Pruitt "very rarely had to work on Sundays." (Compl. ¶ 10.) She further alleges that Pruitt's personnel filed contained a notation, made when Pruitt was hired, that he would not be scheduled to work every other Sunday. Yancey claims that Pruitt never worked any Sundays during the last two years that she worked at Home Depot. Yancey further claims that, when she questioned management officials about Pruitt's not being scheduled to work Sundays, they "all stated that Mr. Pruitt's job was different." (Compl. ¶ 10.) Defendants assert that "Pruitt's job was to go to customers' homes to measure the size of the job and to estimate the amount of material that would be needed for the job. Measuring/estimating is done Monday through Friday or Monday through Saturday." (Defs.' Statement of Material Facts at 3 (internal citations omitted).)

To counter Yancey's argument that similarly situated male employees were treated more favorably with respect to being scheduled off on Sundays, Home Depot offers comparators of its own. Defendants asserts that, in the 180-day period before Yancey filed her EEOC charge, there were four, full-time, male sales associates in Yancey's flooring department: Robert Graves ("Graves"), Craig Johnson ("Johnson"), Mark Dale ("Dale"), and Bobby Harrelson

4

("Harrelson"). Defendants assert that, from February 8, 1999[3] to the week of July 12, 1999, Yancey "was scheduled to be off on more Sundays, percentage-wise, than any of the full-time male associates" in the flooring department. (Defs.' Statement of Material Facts at 4). More specifically, they contend that Yancey was scheduled off 36% of the Sundays during that period, while the percentages of Sundays off for Graves, Drummer, Johnson, and Dale and Harrelson[4] were 32%, 27%, 33%, and 27% respectively.

Yancey offers other illustrations of how Home Depot allegedly subjected her to disparate treatment. Yancey claims that, in the fall of 1997, she asked the human resources manager, Cindy Rhodes ("Rhodes"), for accommodation "for her religion as required under Title VII." (Compl. ¶ 13.) Yancey alleges that no steps to accommodate her were taken as a result of this meeting, even though Rhodes told her that she would look into it. Defendants admit that Yancey met with Rhodes "to discuss [Yancey's] situation at work," but they deny the remainder of these allegations. Yancey points to another example of how Home Depot discriminated against her. She claims that she submitted a vacation request in May 1999, and that Smith approved her request. Yancey asserts that Harper nevertheless scheduled her to work on those days for which she had requested vacation.

Yancey discusses another incident where she was not accommodated with respect to having Sundays scheduled off. She claims that she requested to be off on a Saturday or Sunday because her daughter, who was suffering from cancer, was going to be visiting her. Yancey's request was granted by Harper, but Harper subsequently changed the schedule. Yancey claims

---

[3]This date is slightly greater than 180 days before Yancey filed her EEOC charge.

[4]Because Harrelson was hired to replace Dale, Home Depot combined the data and compiled it to reach one single calculation.

she was required to work both Saturday and Sunday, "while other employees who had several Sundays off were also given that Sunday off." (Compl. ¶ 16.) Defendants deny these allegations and further aver that Home Depot permits its employees "to swap days off with the approval of a manager," but that Yancey "seldom asked her fellow associates to switch days with her." (Defs.' Statement of Material Facts at 3-4.)

Now turning to the events leading to Yancey's departure from Home Depot, Yancey applied at Lowe's Home Improvement Center ("Lowe's") in Cullman, Alabama, in March 1999. She was subsequently extended an offer of employment. Yancey intended to accept the employment offer from Lowe's, but she sought to delay her disengagement from Home Depot for three months because she wanted to receive stock to which she thought she was entitled if she remained at Home Depot longer. After submitting her resignation to Smith, Yancey alleges that she told Smith and Burns that she did not want to leave Home Depot, but that she felt she needed to because she needed a job that would allow her to attend church services on Sundays. She claims that she was told that, if she chose not to resign, then she would be scheduled off every other Sunday and that such agreement would be placed in her file. Claiming that she relied on these representations, she alleges that she decided not to resign from Home Depot and to reject the employment offer from Lowe's. She asserts that the agreement was broken the first week. She further argues:

> [t]hereafter, plaintiff was given Mother's Day off. She took another Sunday as a vacation day. It was not until A.C. Drummer came back on full time with every Sunday off that management allowed plaintiff to have a few Sundays off to keep her quiet. She was written up, however, for complaining.

(Compl. ¶ 14.) Defendants deny that the parties ever reached such an agreement and they deny that any alleged agreement was ever broken. Home Depot asserts that, in the seventeen weeks

6

following Yancey's conversation with store management regarding her impending resignation, she was scheduled off on 41% of the Sundays and that her work was scheduled so that she could still attend church on 59% of the Sundays. Within one or two weeks of her decision to decline the employment offer from Lowe's and to remain at Home Depot, Yancey once again decided that she wanted to leave Home Depot. Yancey testified in her deposition, that, at this point, she called Lowe's to ask them to hire her again. It appears from the evidence that Yancey did not resign from Home Depot until he had secured an employment offer from Lowe's.

On August 19, 1999, Yancey filed a charge of discrimination with the EEOC. She received her Notice of Right to Sue on May 9, 2000. In the instant suit, Yancey asserts a claim for religious discrimination under Title VII, alleging that "Home Depot failed to accommodate her religious needs, even though the accommodation would not impose any undue hardship on the company." (Compl. ¶ 20.) Yancey also asserts claims that Home Depot discriminated against her on the basis of her gender. She further alleges that Home Depot retaliated against her "for her prior requests for religious accommodation by requiring her to work after approving a vacation request." (Compl. ¶ 30.) In her complaint, Yancey also asserts that defendants violated the EPA by

> paying plaintiff less than male employees for equal work performance in jobs requiring substantially the same skill, effort, responsibility, and working conditions as the plaintiff's job required. The male employees who were receiving higher pay and benefits had skills, effort, responsibility, and seniority that were equivalent to, or less than, those of plaintiff.

(Compl. ¶ 34.) Yancey also asserts state law claims for breach of contract and fraud regarding Home Depot's alleged "promises and representations" that she would be allowed to attend church on Sundays.

7

II. DISCUSSION

A.   Claims against Tom Burns

Yancey seems to concede in her brief in response to defendants' motions for summary judgment that the Rule 56 motion should be granted in favor of Burns with respect to all claims, except the fraud claim. Moreover, Yancey contends that the only claim she asserted again Burns in her complaint is her state law claim of fraud. To ultimately end this confusion, the court finds that summary judgment is due to be granted in favor of Burns regarding Yancey's claim for breach of contract, and her Title VII and EPA claims. The Eleventh Circuit has held that "'[i]ndividual capacity suits under Title VII are . . . inappropriate.'" *Cross v. Alabama*, 49 F.3d 1490, 1504 (11th Cir. 1995 (quoting *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)) (ellipses in original). Additionally, EPA claims against supervisors and managers in their individual capacities fail because a defendant in his individual capacity lacks control over the plaintiff's employment. *Welch v. Laney*, 57 F.3d 1004, 1010-11 (11th Cir. 1995).

This court's usual rule when it dismisses all federal claims with prejudice is to dismiss pendent state claims without prejudice. That course will be followed in this case. Consequently, the motion for summary judgment pertaining to the pendent state law fraud claim is due to be denied, but the action, insofar as it asserts such state claim, is due to be dismissed without prejudice for lack of jurisdiction.

B.   Claims against Home Depot

   1.   Religious Discrimination

Section 703(a)(1) of Title VII makes it an unlawful employment practice for an employer to discriminate because of religion. To establish a prima facie case of religious

discrimination of the variety interposed by Yancey, namely that Home Depot failed to reasonably accommodate Yancey's attendance at Sunday church services, a plaintiff must show (1) that a practice or requirement of her employer conflicts with the exercise of a sincerely held religious belief, (2) that the employee has notified the employer of the conflict, and (3) that plaintiff suffered adverse employment action for her failure to comply with the conflicting employment requirement or practice. *See Beadle v. Hillsborough County Sheriff's Dep't*, 29 F.3d 589, 592, n.5 (11th Cir. 1994). In *Ansonia Board of Education v. Philbrook*, 479 U.S. 60 (1986), "the Court wrote that the employer there would violate Title VII only if it overtly discriminated against a religiously-necessitated employee absence if under similar circumstances it would provide paid leave for a non-religious reason." Harold S. Lewis, Jr., *Civil Rights and Employment Discrimination Law*, at 197 (1997) (discussing *Ansonia*, 479 U.S. 60 (1986)).

    After reviewing the evidence and Yancey's complaint, and after considering the above-quoted statement, it is clear that Yancey has not stated a claim of religious discrimination; rather, the allegations substantiating her discrimination claims constitute only discrimination on the basis of gender, if they constitute any form of discrimination. The crux of Yancey's claims is that she was required to work Sundays while her male counterparts were not; she claims that the work schedules of male employees permitted Sunday church attendance, while her schedule did not. The court understands that this form of alleged discrimination somehow impacted Yancey's observance of her religious beliefs. However, there is no evidence to suggest that Home Depot discriminated against religiously-necessitated absences, while providing, under similar circumstances, excused leave for non-religious reasons. Consequently, the Rule 56

motion regarding Yancey's claim of religious discrimination is due to be granted in favor of Home Depot.

2.      Gender Discrimination

A prima facie case of gender discrimination can be established by plaintiff's offering of direct evidence of discrimination, statistical proof of a pattern of discrimination, or circumstantial evidence to prove discriminatory intent, using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Direct evidence of discrimination would be evidence, which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989) (citations omitted). The isolated statements allegedly uttered by Harper do not rise to the level of direct evidence. Consequently, all evidence before the court is best analyzed under the tripartite allocation of evidentiary production used to circumstantially prove discrimination.

Under the *McDonnell Douglas* paradigm, plaintiff must prove a prima facie case of gender discrimination by a preponderance of the evidence. The burden of production then shifts to defendant to articulate a legitimate, non-discriminatory reason for terminating plaintiff's employment. Plaintiff is then given the opportunity for rebuttal to show by a preponderance of the evidence that the articulated reason offered by defendant is pretextual. Throughout this analytical framework, plaintiff retains the ultimate burden of persuasion that she has been the victim of intentional discrimination. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

To establish a prima facie case of gender discrimination, the plaintiff must make the following showing: (1) that she belongs to a protected class; (2) that she was subjected to an

10

adverse employment action; (3) that her employer treated similarly situated male employees more favorably; and (4) that she was qualified to do the job. *See McDonnell Douglas*, 411 U.S. 792 at 802. "The central inquiry in evaluating whether the plaintiff has met his initial burden in a Title VII case is whether the circumstantial evidence presented is sufficient to create an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). When a plaintiff establishes a prima facie case, a presumption that plaintiff was the subject of intentional gender discrimination arises. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 254 (1981).

  Turning to whether Yancey established a prima facie case of discrimination, the primary inquires are whether Yancey suffered any adverse employment action and whether similarly situated male employees were treated more favorably than she was. As a female, Yancey has satisfied the first element of the prima facie case, and the court assumes, without deciding, that she is qualified for her salesperson position. Yancey's claim for gender discrimination fails, however, because the evidence does not establish that she was constructively discharged and because she cannot point to any proper male comparators who were treated more favorably.

  Discussing what constitutes a constructive discharge, the Eleventh Circuit has stated:

> "[w]hen an employee involuntarily resigns in order to escape intolerable and illegal employment requirements to which he or she is subjected because of . . . religion [or] sex . . . the employer has committed a constructive discharge in violation of Title VII." Moreover, a plaintiff "must demonstrate that [her] working conditions were so intolerable that a reasonable person in [her] position would be compelled to resign."

*Morgan v. Ford*, 6 F.3d 750, 755-56 (11th Cir. 1993) (internal citations omitted). The court cannot find that Yancey's working conditions and Home Depot's requirement of Yancey to work some Sundays are intolerable. If her work schedule was so intolerable, then why did

Yancey not leave Home Depot when she first received the employment offer from Lowe's? Moreover, her work schedule could not have been terribly intolerable because she sought to endure it for at least three months longer while she waited to earn her right to receive stocks. *See Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208, 1236 (11th Cir. 2001) (stating that plaintiff "stayed for several months" after the alleged intolerable working conditions were imposed, "suggesting that [those working conditions] were not so intolerable as to leave [plaintiff] with no choice but to resign"). Additionally, the court cannot consider that Home Depot's scheduling was intolerable when, in the seventeen weeks following Yancey's conversation with store management regarding her first attempt to accept Lowe's employment offer, Yancey's schedule permitted her to attend church on almost 60% of the Sundays. The court also finds persuasive the decisions of other district courts finding that the departure of plaintiff from defendant's employ to accept another job is a factor that undermines a claim of constructive discharge. *See Hogue v. MQS Inspection, Inc.*, 875 F. Supp. 714, 723-24 (D. Colo. 1995); *Sims v. Brown & Root Indus. Servs., Inc.*, 889 F. Supp. 920, 931 (W.D. La. 1995). When considering that "[t]he standard for proving constructive discharge is higher than the standard for proving a hostile work environment" and that the Eleventh Circuit "require[s] pervasive conduct by employers before finding that a hostile work environment existed or a constructive discharge occurred," this court can conclude only that these facts do not rise to the level of intolerance and pervasiveness that is required to establish constructive discharge. *See Hipp*, 252 F.3d at 1231 (citing *Landgraf v. USI Film Prods.*, 689 F.2d 427, 430 (5th cir. 1992); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247 (11th Cir. 1999)).

Not only has Yancey failed to establish that she was constructively discharged, but she

12

has also failed to establish that she was treated less favorably than similarly situated male employees. Yancey specifically asserts that Harper, Pruitt, Drummer, and Files were male employees who were similarly situated, but who were not required to work on Sundays because they were scheduled off or because they failed to report to work, with impunity, for the hours during which Yancey sought to attend church services. In establishing this element of the prima facie case, the Eleventh Circuit has stated that, "[t]o make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant aspects." *Holifield*, 115 F.3d at 1562 (internal citations omitted).

Contrary to Yancey's allegations, Harper is not a proper comparator. Harper, who was Yancey's supervisor is not similarly situated because the two did not hold the same position and thus were not subjected to the same employment policies. The same rationale applies when comparing Yancey and Pruitt. Pruitt worked as a measurer/estimator for Home Depot–not as a salesperson; therefore, because the two employees held different positions and were subject to different employment practices, they cannot be considered similarly situated.

Files and Drummer, the other alleged comparators, are also not similarly situated. Yancey worked at Home Depot from March 1996 to July 1999 as a full-time employee. Files was a part-time employee from 1996 to 1998, and, after 1998, he did not work in the flooring department as a salesperson. Consequently, because the employment policies and practices were different for part-time employees,[5] Files is not identical or nearly identical to Yancey in the most relevant aspects. Drummer was a part-time employee from November 1998 to March

---

[5]*See infra.*

13

1999, but he was full-time for the other periods during Yancey's tenure. Just as Files is not a proper comparator because he was part-time, Drummer cannot be considered similarly situated for the periods during which his status was part-time. Drummer is not a proper comparator, however, even for those times during which he worked full-time, because he was not treated more favorably than Yancey with respect to his Sunday work schedule. From February 8, 1999 through July 12, 1999,[6] Yancey was scheduled to be off on 36% of the Sundays, while Drummer was scheduled to be off only 27% of those Sundays. Thus, the court cannot find that Drummer was a similarly situated male employee who was treated more favorably than Yancey.

The court concludes that Yancey has failed to establish that she was treated less favorably than similarly situated male employees. In reaching this conclusion, the court is particularly persuaded by Home Depot's uncontradicted data regarding other male employees in the flooring department. There were four, full-time, male employees who worked in the flooring department in the six months prior to Yancey's departure from Home Depot: Graves, Johnson, Dale, and Harrelson. Each of these employees had fewer Sundays off than did Yancey. Additionally, Drummer, while working full-time, had fewer Sundays off than Yancey. Thus, because Yancey has failed to establish that similarly situated, male employees were treated more favorably than she was and that she was constructively discharged, she has not established a prima facie case. Yancey's claim for gender discrimination must therefore fail, and Home Depot is entitled to summary judgment.

    3.    Retaliation

Title VII prohibits adverse action against an employee in response to a charge or

---

[6]This period corresponds to the six-month period prior to Yancey filing her EEOC Charge.

participation in a proceeding addressing other employment practices made unlawful under Title VII. "To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is some causal relationship between the two events." *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 507 (11th Cir. 2000) (citations omitted). Complaining to superiors constitutes statutorily protected expression. See *id*. The court assumes that Yancey satisfied the first element by discussing with her supervisors her dissatisfaction with being required to work on Sundays. The court cannot find, however, that Yancey can establish a prima facie case of retaliation. As discussed above, Yancey cannot establish that she was constructively discharged; thus, she fails in this manner to prove that she suffered any adverse employment action. Yancey also argues, however, that she suffered adverse employment action when Harper scheduled her to work on the dates for which she had submitted a vacation request that had been approved.

   The Eleventh Circuit defines an adverse employment action as "an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (internal citations omitted). Although actions such as "undeserved negative job evaluations, demotions, disadvantageous transfers, or toleration of harassment" can constitute actionable retaliation, any conduct that falls short of an ultimate employment decision must meet a threshold level of substantiality to be cognizable. See *Graham v. State Farm*, 193 F.3d 1274, 1284 (11th Cir. 1999) (affirming the

district court's grant of summary judgment and attaching to its decision the above-quoted opinion of the district court as Appendix A). To be sufficiently substantial, the plaintiff must "show a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original). "Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis, using both a subjective and an objective standard." *Gupta*, 212 F.3d at 587 (internal citations omitted).

Though Yancey was not allowed vacation on the dates for which she originally requested, Harper, after learning of the problem, scheduled Yancey to be off for four consecutive days without having to use any of her accrued vacation time, and this time off was scheduled to begin on the third day of Yancey's requested dates. Furthermore, the evidence suggests that Harper, when he made out the schedule for the week in question, had not been notified of the approved vacation request. Consequently, although the scheduling of Yancey to work during those dates for which she requested vacation obviously affected a term or condition of her employment, this court cannot find that this act by Harper meets the requisite level of substantiality, that the act is a serious and material change in the terms, conditions, and privileges of Yancey's employment, or even that the act had adverse consequences. Because Yancey has therefore failed to establish a prima facie case of retaliation, Home Depot is entitled to summary judgment.

  4. EPA Claim

In Yancey's brief in opposition to defendants' motion for summary judgment, she fails to respond to Home Depot's argument with respect to her claim under the EPA. "In opposing a

motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.'" *See Resolution Trust v. Dunmar Corp.*, 43 F.3d 587, 577 (11th Cir. 1995) (quoting *Ryan v. International Union of Operation Eng'rs, Local 675*, 794 F.2d 641, 643 (11th Cir. 1986). Consequently, Home Depot is entitled to summary judgment insofar as its motion pertains to this EPA claim.

    5.    Pendent State Law Claims

Addressing the state law fraud claim against Burns, the court stated its usual practice with respect to state law claims appended to federal claims that are due to be dismissed on a summary judgment motion. The court will once again adhere to this practice; therefore, the motion for summary judgment, insofar as it pertains to the pendent state law claims of breach of contract and fraud against Home Depot, is due to be denied, but those claims will be dismissed without prejudice for lack of jurisdiction.

### III. CONCLUSION

For the foregoing reasons, the motions for summary judgment must be granted in favor of Home Depot and Tom Burns on all federal claims. The Rule 56 motions are due to be denied on all pendent state law claims, but those claims shall be dismissed for lack of jurisdiction. A separate and appropriate order will be entered.

DONE this 6 day of May 2002.

                                                WILLIAM M. ACKER, JR.
                                                UNITED STATES DISTRICT JUDGE